## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON DIVISION

|  |  |  |
|---|---|---|
| **MICHAEL KELLY, on behalf of himself and others similarly situated,** | ) ) ) | Civil Action No. 15-cv-05813 |
|  | ) | **PLAINTIFF'S MEMORANDUM OF** |
| *Plaintiff,* | ) | **LAW IN SUPPORT OF UNOPPOSED** |
|  | ) | **MOTION FOR PRELIMINARY** |
| **v.** | ) | **APPROVAL OF CLASS ACTION** |
|  | ) | **SETTLEMENT** |
| **FIRST ADVANTAGE BACKGROUND** | ) |  |
| **SERVICES CORP.,** | ) | Hon. Michael Shipp |
|  | ) | District Judge |
| *Defendant.* | ) |  |
|  | ) | Hon. Tonianne J. Bongiovanni |
|  | ) | Magistrate Judge |

## MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR
## <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

**FRANCIS & MAILMAN, P.C.**
James A. Francis
John Soumilas
Lauren KW Brennan
100 S. Broad Street, Suite 1902
Philadelphia, PA 19110
T: 215-735-8600

*Attorneys for Plaintiffs and the class*
*Additional Attorneys on Signature Block*

## TABLE OF CONTENTS

I.      INTRODUCTION................................................................................................1

II.     HISTORY OF THE LITIGATION ....................................................................2

        A.      The Complaint And Amended Complaints...............................................2

        B.      Discovery Proceedings .............................................................................3

        C.      The Mediation and Settlement ..................................................................3

III.    THE TERMS OF THE PROPOSED SETTLEMENT .......................................4

        A.      The Rule 23(b)(3) Class Settlement .........................................................4

        B.      The Release is Tailored to the Relief .......................................................5

        C.      Settlement Administration and Notice to the Class...................................5

                1.      Settlement Administrator ................................................................5

                2.      Notice ..............................................................................................6

        D.      CAFA Notice .............................................................................................6

        E.      Attorneys' Fees and Service Awards ........................................................6

IV.     THE PROPOSED CLASS SHOULD BE CERTIFIED FOR
        SETTLEMENT PURPOSES ..............................................................................7

        A.      The Proposed Settlement Class Meets Rule 23(a)'s Requirements ........8

                1.      Numerosity......................................................................................8

                2.      Commonality....................................................................................8

                3.      Typicality ......................................................................................10

                4.      Adequacy of Representation ..........................................................10

        B.      The Proposed Settlement Class Meets Rule 23(b)'s Requirement ........12

                1.      Common Questions of Law and Fact Predominate Over Individual Ones...12

                2.      A Class Action is the Superior Method for Resolving
                        the Class Members' Claims ..........................................................13

V.      THE SETTLEMENT IS FAIR AND ADEQUATE...........................................14

        A.      Standards for Preliminary Approval of a Class Settlement ...................14

        B.      The Terms of the Proposed Settlement are Fair, Reasonable and Adequate .........16

VI.     THE PROPOSED NOTICE PLAN MEETS RULE 23'S REQUIREMENTS .......17

        A.      The Notice Plan Satisfies Rule 23 and Due Process................................18

        B.      Request for Approval of Notice Plan......................................................18

VII.    CONCLUSION .................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. Holiday Universal, Inc.*,
   249 F.R.D. 166 (E.D. Pa. 2008)............................................................................ 11

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................................................................ 7

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994)................................................................................... 8

*Barel v. Bank of America*,
   255 F.R.D. 393 (E.D. Pa. 2009)..................................................................... 6, 11

*Beck v. Maximus, Inc.*,
   2005 WL 589749 (E.D. Pa. March 11, 2005) .................................................. 11

*Bonett v. Education Debt Services, Inc.*,
   2003 WL 21658267 (E.D. Pa. 2003) ............................................................... 11

*Boone v. City of Philadelphia*,
   668 F. Supp. 2d 693 (E.D. Pa. 2009) ................................................................ 7

*Cavin v. Home Loan Ct., Inc.*,
   236 F.R.D. 387 (N.D. Ill. 2006).......................................................................... 13

*Chakejian v. Equifax Info. Servs.*,
   275 F.R.D. 201 (E.D. Pa. 2011)....................................................................... 6, 17

*Colbert v. Dymacol, Inc.*,
   2001 WL 34083813 (E.D. Pa. Oct. 2, 2001).................................................... 12

*Collier v. Montgomery County*,
   192 F.R.D. 176 (E.D. Pa. 2000)........................................................................ 15

*Eisenberg v. Gagnon*,
   766 F.2d 770 (3d Cir. 1985)............................................................................... 8

*Fry v. Hayt, Hayt & Landau*,
   198 F.R.D. 461 (E.D. Pa. 2000)........................................................................ 12

*Gaumer v. The Bon-Ton Stores*,
   C.A. No. 02-8611 (E.D. Pa. Dec. 30, 2003) ................................................... 11

*General Telephone Co. of the Southwest v. Falcon*,
   457 U.S. 147 (1982)............................................................................................ 10

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975).............................................................................. 15

*Hassine v. Jeffes*,
   846 F.2d 169 (3d Cir. 1998).............................................................................. 10

*In re Cmty. Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005)............................................................................... 7

*In re Linerboard Antitrust Litigation*,

292 F.Supp.2d 631  (E.D. Pa. 2003) ....................................................................... 14

*In re Prudential Insurance Company America Sales Practice Litigation,*
  148 F.3d 283 (3d Cir. 1998) ................................................................. 10, 11, 14

*In re Rite Aid Corp. Securities Litigation,*
  269 F. Supp. 2d 603 (E.D. Pa. 2003) ........................................................................ 7

*In re Warfarin Sodium Antitrust Litig.,*
  212 F.R.D. 231 (D. Del. 2002) ............................................................................. 14

*In re: General Motors Truck Litigation,*
  55 F.3d 768 (3d Cir. 1995) ............................................................... 14, 15, 16

*Jordan v. Commonwealth Financial Systems, Inc.,*
  237 F.R.D. 132 (E.D. Pa. 2006) ........................................................................... 11

*LaRocque v. TRS Recovery Services, Inc.,*
  285 F.R.D. 139 (D. Me. 2012) ............................................................................. 11

*Larson v. AT&T Mobility LLC,*
  687 F.3d 109 (3d Cir. 2012) ............................................................................... 17

*Lewis v. Curtis,*
  671 F.2d 779 (3d Cir. 1982) ............................................................................... 11

*Markocki v. Old Republic National Title Ins. Co.,*
  2008 WL 5159252 (E.D. Pa. Dec. 9, 2008) ......................................................... 11

*Mullane v. Central Hanover Trust,*
  339 U.S. 306 (1950) ........................................................................................... 17

*Orloff  v. Syndicated Office Systems, Inc.,*
  2004 WL 870691 (E.D. Pa 2004) ........................................................................ 11

*Oslan v. Collection Bureau of Hudson Valley,*
  206 F.R.D. 109 (E.D. Pa. 2002) ..................................................................... 11, 12

*Perry v. FleetBoston Financial Corp.,*
  229 F.R.D. 105 (E.D. Pa. 2005) ................................................................... 6, 9, 11

*Petrolito v. Arrow Financial Services, LLC,*
  221 F.R.D. 303 (D. Conn.  2004) ........................................................................ 11

*Piper v. Portnoff Law Associates, Ltd.,*
  215 F.R.D. 495 (E.D. Pa. 2003) ........................................................................... 12

*Rodriguez v. National City Bank,*
  726 F.3d 372 (3d Cir. 2013) ................................................................................. 9

*Safeco Insurance Co. of America v. Burr,*
  551 U.S. 47 (2001) ............................................................................................. 13

*Samuel-Bassett v. Kia Motors America, Inc.,*
  212 F.R.D. 271 (E.D. Pa. 2002) ........................................................................... 12

*Sapp v. Experian Information Solutions, Inc.,*
  2013 WL 2130956 (E.D. Pa. May 15, 2013) ....................................................... 11

*Saunders v. Berks Credit & Collections,*

2002 WL 1497374 (E.D. Pa. 2002) ...................................................... 11

*Schilling v. Let's Talk Cellular and Wireless, Inc.*,
2002 WL 391695 (E.D. Pa. Feb. 6, 2002) ............................................ 12

*Soutter v. Equifax Info. Servs., LLC*,
3:10CV107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011)................... 12

*Stoner v. CBA Information Services*,
352 F.Supp.2d 549 (E.D. Pa. 2005) ...................................................... 11

*Strausser v. ACB Receivables Management, Inc.*,
2008 WL 859224 (E.D. Pa. Mar. 28, 2008)............................................ 11

*Street v. Portfolio Recovery Associates*,
C.A. No. 01-3684 (E.D. Pa. July 30, 2003) .................................. 1, 12, 18

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011)..................................................................... 7

*Wal–Mart Stores, Inc. v. Dukes*,
131 S.Ct. 2541 (2011)............................................................................. 9

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)..................................................................... 15

*Weiss v. York Hospital*,
745 F.2d 786 (3d Cir. 1984)............................................................. 8, 10

*White v. Experian Info. Solutions*,
993 F.Supp.2d 1154, 1169 (C.D. Cal. 2014) ....................................... 11

## Statutes

15 U.S.C. § 1681g(a)(1)....................................................................... 2, 3
15 U.S.C. § 1681g(a)(2)....................................................................... 2, 3
15 U.S.C. § 1681k.................................................................... 2, 5, 9, 13
15 U.S.C. § 1681n..................................................................................... 2
15 U.S.C. §§ 1681 ......................................................................... *passim*
28 U.S.C. § 1715(b) ................................................................................. 6

## Other Authorities

H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009)........................ 14
MANUAL FOR COMPLEX LITIGATION 4TH, § 21.63 (2004) ............................................. 14

## Rules

Fed. R. Civ. P. 23(b)(3)................................................................. *passim*
Fed. R. Civ. P. 23(c)(2)(B) ........................................................... 17, 18
Fed. R. Civ. P. 23(c)(3).................................................................... 17
Fed. R. Civ. P. 23(e)(1).................................................................. 17, 18

## I.        INTRODUCTION

Plaintiff Michael Kelly, by counsel, hereby requests that this Court enter an Order granting preliminary approval of a proposed settlement of this class action; conditionally certifying a class for settlement purposes only pursuant to Fed. R. Civ. P. 23(b)(3); appointing Plaintiff's attorneys as class counsel for the settlement class; approving the proposed notice plans for the settlement class; appointing Dahl Administration as Settlement Administrator for the settlement class; and, scheduling a hearing to consider final approval of the proposed settlement.

The parties' Settlement Agreement is attached as Exhibit 1.[1]  Plaintiff proposes an appropriate form of notice to be delivered to the class members, and has attached a true and correct copy as Exhibit 2. Attached as Exhibits 3 and 4, respectively, are the proposed Order of Preliminary Approval of Settlement and Final Judgment and Order of Dismissal with Prejudice. Attached as Exhibit 5 is a firm biography supporting the qualifications and litigation experience of class counsel.

As forth in more detail below, the settlement is fair, adequate and reasonable, and readily meets the standard for approval for several reasons.

First, it provides automatic cash payments to the approximately 8,700 job seekers for whom First Advantage allegedly provided employment screening reports that included public record information without notifying them that adverse public record information was being reported about them at the time it reported such information to an employer.  These payments will be made and guaranteed without any need of a Class member to submit any claim information or produce documentation.

---

[1]        Capitalized words in this Memorandum refer to defined terms in the Settlement Agreement.

Second, the release given by class members is narrowly limited to the class claims asserted, and preserves Class members rights bring claims for any inaccuracies appearing on the background reports.   Third, the stage of the proceedings demonstrates the fairness and non-collusive nature of the settlement.   It was only reached after approximately two (2) years of litigation and settlement negotiations, including those overseen by a nationally preeminent mediator.

### HISTORY OF THE LITIGATION

**A.      The Complaint and Amended Complaints**

This is a consumer class action brought under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"). The case was filed on March 31, 2015[2], and alleged that Defendant First Advantage Background Services Corp., (collectively, "Defendant" or "First Advantage") violated various provisions of the Fair Credit Reporting Act ("FCRA") in connection with the procurement and provision of employment screening reports about certain consumers. The case was brought on behalf of job applicants the nation over who applied to work for various entities and were the subjects of background reports provided by First Advantage.

In Counts II, III, and IV[3] of the Second Amended Complaint, Plaintiff sought class-wide relief for violations of sections 1681k, 1681g(a)(1), and 15 U.S.C. § 1681g(a)(2) of the FCRA pursuant to 15 U.S.C. § 1681n, which provides remedies for any willful violations of the statute, including statutory and punitive damages, attorneys' fees and costs.

Count II alleged that First Advantage failed to timely provide consumers like Plaintiff, who were the subjects of consumer reports for employment purposes furnished by Defendant which contained derogatory public records, a written notice that it was furnishing the subject report and

---

[2]      This matter was originally filed in the Eastern District of Virginia on March 31, 2015 and subsequently transferred to this Court on July 28, 2015 after Plaintiff's claims were severed by stipulation (Dkts. 20, 21).

[3]      Plaintiff's Count I is an individual claim against Defendant not relevant here.  The allegations and claims contained in Counts III and IV are not within the ambit of the Parties' settlement and also not relevant to this Motion.

containing the name of the person that was to receive the report.  Plaintiff alleged that this conduct violates section 1681k(a)(1) of the FCRA.

Count III alleged that First Advantage failed to provide consumers like Plaintiff, who requested a copy of their consumer report from Defendant that contained a public record item, the name of the courthouse or the address and telephone number of the courthouse from which said public record was derived.  Plaintiff alleged that this conduct violates section 1681g(a)(1) of the FCRA.

Count IV alleged that First Advantage identified the source of public record items on reports requested by consumers like Plaintiff, as a "court."  Plaintiff alleged that this conduct violates section 1681g(a)(2) of the FCRA.

## B.        Discovery Proceedings

The Parties exchanged documents and written discovery that identified a class numbering approximately 8,700 job seekers.   Plaintiff obtained third party discovery through a subpoena served upon Trans Union, LLC.  After the class was identified and sufficient information about the claims and defenses had been fleshed out, the parties agreed to begin settlement discussions in earnest.  The parties engaged in formal discovery until October of 2015, when the Parties requested that the Court enter an order staying formal discovery so the Parties could engage in settlement discussions.

## C.        The Mediation and Settlement

On May 10, 2016, the Parties attended a lengthy mediation at the JAMS Philadelphia office before Hon. Diane M. Welsh (Ret.), a former Magistrate Judge for the United States District Court for the Eastern District of Pennsylvania and a nationally regarded mediator. The parties engaged in extensive preparation for the mediation, generating substantial briefings and position papers.

The mediation proceeded as scheduled but the parties were unable to reach a settlement at that time. Thereafter, the parties continued with settlement negotiations among themselves, and continued to exchange discovery. The parties finally reached a proposed settlement on January 3rd, 2017, with many of the details remaining to be resolved.

For the past several months since the Parties announced the settlement, they drafted and exchanged settlement documents and continued finalizing terms through the date of the instant submission.

As demonstrated by the significant discovery exchanged and the length of litigation, there is no doubt that the settlement presented for the Court's consideration is the result of hard fought, arm's length negotiations between the Parties.

## II.      THE TERMS OF THE PROPOSED SETTLEMENT

The deal which emerged from the Parties' mediation was based on Defendant's representations about the substantial number of individuals in the Settlement Class. Defendant has represented that the Settlement Class consists of approximately 8,714 ascertainable individuals.

### A.      The Rule 23(b)(3) Class Settlement

The Settlement Agreement defines a Settlement Class pursuant to Rule 23(b)(3) (the "Settlement Class"), consisting of:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a consumer report furnished to a third party by First Advantage using its Advantage Direct platform, (b) that was furnished for an employment purpose, (c) that contained at least one record of a civil lien, bankruptcy or judgment from TransUnion, LLC, (d) on or after January 1, 2013 through December 31, 2015 and (e) to whom First Advantage did not place in the United States mail postage pre-paid, on the day it furnished any part of the report containing the public record, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report.

Exhibit 1 at ¶ 3.1.1.  According to the Settlement Agreement, the members of the Settlement Class will participate in the *pro rata* distribution of the funds remaining in the Settlement Escrow (initially $750,000) after the distribution of attorney's fees and costs, notice costs, administration costs, and Class Representative's Individual Settlement Award and Service Payment.  *Id*. at ¶ 5.1.1.  The Parties estimate that the amount remaining after the above items are deducted will be approximately $475,000.  Depending on whether members of the Class opt out, or if their notices are returned and they cannot be located, the Parties estimate each member of the Settlement Class will be sent a check for approximately $50.[4]  Following distribution, if any unclaimed funds remain, including uncashed checks, they will be distributed to Community Legal Services as a *cy pres* award.  Exhibit 1 at ¶ 5.6.  The Settlement Administrator may send out new checks (and cancel the original ones) to any Settlement Class member who makes such a request.

**B.    The Release is Tailored to the Relief**

As set forth above, Plaintiff's class claims arose from the FCRA's notification provision set forth at 15 U.S.C. §1681k(a)(1) and its file disclosure provision set forth as 15 U.S.C. §1681g. The release given by Class members is limited to these claims, and thus properly tailored to the claims asserted.  Exhibit 1 at ¶4.  If any Class member lost a job opportunity because of an inaccuracy in his or her background check, and wants to bring a claim under the FCRA's maximum possible accuracy or reinvestigation provisions, (e.g. FCRA section 1681e(b) or 1681i), he or she may still bring it as such claims have been preserved.

**C.    Settlement Administration and Notice to the Class**

---

[4]    The amount of the check mailed to each member of the Settlement Class will be the net amount of class members for whom there are good addresses.  If, for example, based on returned notices, there are 8,500 found members of the class, the estimated $475,000 remaining in the Settlement Fund after distribution of attorneys' fees and costs, administration costs, and the Class Representative's Individual Settlement Award and Service Payment are deducted will produce a distribution in the amount $50 per class member. The funds covering any uncashed check will become a *cy pres* award. Ex.hibit 1 at ¶ 5.6.

    1.    *Settlement Administrator*

The Parties have agreed to the hiring of Dahl Administration, LLC as the Settlement Administrator in this case.  *See* http://www.dahladministration.com.

    2.    *Notice*

The Parties have agreed, pending the approval of this Court, to disseminate notice of their settlement to members of the Settlement Class in a form substantially similar to the document attached hereto as Exhibit 2.

**D.    CAFA Notice**

Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Defendant will a notice of the settlement to the appropriate federal and state officials pursuant to 28 U.S.C. § 1715(b), no later than ten days after this filing.  Defendant will file with the Court a proof of service after the CAFA notice has been completed.

**E.    Attorneys' Fees and Service Awards**

The settlement also provides for an individual settlement and service award for the Class Representative, attorneys' fees and costs.  Plaintiff's counsel will ask the Court to approve attorneys' fees and costs and a Class Representative service award negotiated by the Parties and permitted in the settlement agreement.  Both subjects – attorneys' fees and service awards – were addressed in mediation only after the Parties had reached an agreement as to the recovery for the Settlement Class.

Plaintiff's counsel will seek an individual service award for the Class Representative in the amount of $5,000, which Defendant does not oppose.  This amount is consistent with other service awards approved by courts in this Circuit.  *See Chakejian v. Equifax Info. Servs.*, 275 F.R.D. 201, 220-21 (E.D. Pa. 2011) (awarding $15,000 to each of three plaintiff); *Barel v. Bank of America,*

255 F.R.D. 393, 403 (E.D. Pa. 2009) ($10,000); *Perry v. FleetBoston Financial Corp.,* 229 F.R.D.

105, 118 (E.D. Pa. 2005) (awarding $5,000, and citing cases).

Plaintiff's counsel will seek an award of fees and costs in an amount not to exceed

$250,000.00, or 1/3 of the settlement fund.  The award shall include all fees, costs and other

expenses for all attorneys, their employees, consultants, experts and other agents who performed

work in connection with this litigation.  Defendant has agreed not to oppose an award up to this

amount.

While Class Counsel will submit documentation supporting the request for attorneys' fees

and costs, including a declaration and lodestar information, at final approval, the amount proposed

initially is squarely within the range of possible approval.  *See Boone v. City of Philadelphia,* 668

F. Supp. 2d 693, 714 (E.D. Pa. 2009)(court taking note of a detailed study of class action fee

awards within the Third Circuit, and ascertaining that the average attorney's fees percentage in

such cases was 31.71% and that the median fee award was 33.3%; *see also*, *In re Rite Aid Corp.*

*Securities Litigation*, 269 F. Supp. 2d 603, 610 (E.D. Pa. 2003) (citing studies of fifty-five

securities cases involving $10 million or more with an average percentage recovery of slightly

over 31%), *vacated and remanded on other grounds,* 396 F.3d 294 (3d Cir. 2005).

## III.   THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

In considering the proposed settlement, the first question for the Court is whether a

settlement class may be conditionally certified for settlement purposes.  *See Amchem Products,*

*Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in

certifying a settlement class, but the proposed class must still satisfy the other requirements of

Rule 23); *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*) ("[B]efore

approving a class settlement agreement, a district court first must determine that the requirements

for class certification under Rule 23(a) and (b) are met." (internal quotation marks omitted)); *In re Cmty. Bank of N. Va.,* 418 F.3d 277, 300 (3d Cir. 2005) ("[R]egardless of whether a district court certifies a class for trial or for settlement, it must first find that the class satisfies all the requirements of Rule 23.").

The Parties have reached a proposed agreement on behalf of the Settlement Class.  In support of their contention that proper and sufficient grounds for class certification exist under Rule 23, the Class Representatives would show the following.

A.     **The Proposed Settlement Class Meets Rule 23(a)'s Requirements**

1.     *Numerosity*

In applying this rule, it has consistently been held that joinder is impracticable where the class is composed of hundreds of potential claimants; indeed, impracticability of joinder has often been found where the class is composed of less than 100 members.  *See, e.g., Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985) (90 class members meets numerosity requirement); *Weiss v. York Hospital,* 745 F.2d 786, 808 (3d Cir. 1984) (92 class members meets the numerosity requirement).

Here, Defendant has represented that the size of the Settlement Class is 8,714 individuals. This large group is certainly sufficient to establish that joinder is impracticable.

2.     *Commonality*

A putative class satisfies Rule 23(a)'s commonality requirement if "the named plaintiff share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994).  As this Circuit reiterated recently,

> [T]hat bar is not a high one.  We have acknowledged commonality to be present
> even when not all plaintiff suffered an actual injury, when plaintiff did not bring
> identical claims,…and, most dramatically, when some plaintiffs' claims may not
> have been legally viable…[.]  In reaching those conclusions, we explained that the

focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is "on whether the defendant's conduct was common as to all of the class members."

*Rodriguez v. National City Bank*, 726 F.3d 372, 382-83 (3d Cir. 2013) (citations omitted) (reviewing commonality standard in light of *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541 (2011), and concluding that while "*Dukes* is an intervening and pointedly clear explication of the law, it did not announce any change in the test for determining commonality." *Rodriguez*, 726 F.3d at 381, n. 2)).

Plaintiff asserts that the following questions of law or fact, which focus on the uniform conduct and procedures of the Defendant, are common to the Class:

1.     whether First Advantage sent the required notice under FCRA section 1681k;

2.     the date on which the First Advantage sent the required notices;

3.     whether First Advantage identified the source of its public record information in reports provided to consumers;

4.     whether First Advantage's conduct constituted a violation of the FCRA;

5.     whether First Advantage acted willfully in its failure to design and implement procedures to assure compliant delivery and/or timing of these notices; and

6.     the appropriate amount of statutory and/or punitive damages that are appropriate for such a violation.

The theories of liability are precise because they arise from the same standard practice and present basic questions that are common to all Class members.  Cases presenting standardized practices directed at consumers invariably present common predominating issues.  *See Perry v. FleetBoston Financial Corp.,* 229 F.R.D. 105 (E.D. Pa. 2005)  (finding Rule 23 requirements met in consumer class action and noting cases routinely certified where 'Defendant have engaged in

standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents.'" (citing cases).  *See also Weiss v. Regal Collections*, 385 F.3d 337, 344-45 (3d Cir. 2004) (claims arising from statements contained in standard collection communications particularly appropriate for class action).

Inasmuch as the Defendant's policies and practices with respect to such conduct were essentially uniform with regard to these issues, commonality is satisfied.  *In re Prudential Insurance Company America Sales Practice Litigation*, 148 F.3d 283, 310 (3d Cir. 1998).

### 3.    *Typicality*

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Prudential*, 148 F.3d at 311.  The threshold for establishing typicality is low.  Typicality does not require that the claims of the class members be identical.  Rather, a plaintiff's claims are typical when the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating her personal claims she can reasonably be expected to advance the interests of absent class members.  *See, e.g., General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 156-157 (1982).

The Class Representative is a member of the Settlement Class, has the same interest in resolution of the issues as all other members of the Class and their claims are typical of all members of the Class.  Plaintiff were each affected by the Defendant's practices in the same manner as all members of the Class.  These facts, and Plaintiff' claims, are therefore typical of the facts and claims of all other members of the proposed Settlement Class.  *See Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir. 1998).

### 4.    *Adequacy of Representation*

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the class. *See, e.g., In re Prudential*, 148 F.3d at 312; *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir. 1982).

Plaintiff fairly and adequately represents the interests of the Class. He has retained attorneys who have substantial experience and proficiency in consumer class actions and FCRA litigation, not only within our circuit but nationwide. *See White v. Experian Info. Solutions*, 993 F.Supp.2d 1154, 1169, 1172 (C.D. Cal. 2014) (finding Francis & Mailman "FCRA specialists" and appointing firm and its team as interim class counsel over objections from competing group because their team's "credentials and experience [we]re significantly stronger in class action and FCRA litigation.")*;LaRocque v. TRS Recovery Services, Inc.,* 285 F.R.D. 139 (D. Me. 2012). *See also Perry, supra* (court finding that "I and a number of my colleagues have previously found that class counsel Francis & Mailman, P.C. … possesses the skill, experience and qualifications necessary to conduct litigation similar to the present lawsuit. *Oslan v. Collection Bureau of Hudson Valley*, 206 F.R.D. 109, 112 (E.D. Pa. 2002); *see also, e.g., Orloff  v. Syndicated Office Systems, Inc.*, 2004 WL 870691, *4 (E.D. Pa 2004) (Surrick, J.); *Bonett v. Education Debt Services, Inc.*, 2003 WL 21658267, *3 (E.D. Pa. 2003) (Davis, J.); *Saunders v. Berks Credit & Collections*, 2002 WL 1497374, *8 (E.D. Pa. 2002) (DuBois, J.))." 229 F.R.D. at 112-13. [5] The

---

[5]      *See also Sapp v. Experian Information Solutions, Inc.,*2013 WL 2130956 (E.D. Pa. May 15, 2013) (Dalzell, J.); *Barel v. Bank of America*, 2009 WL 122805 (E.D. Pa. Jan. 16, 2009) (Surrick, J.); *Markocki v. Old Republic National Title Ins. Co.,* 2008 WL 5159252 (E.D. Pa. Dec. 9, 2008) (Tucker, J.); *Strausser v. ACB Receivables Management, Inc.*, 2008 WL 859224 (E.D. Pa. Mar. 28, 2008) (O'Neill, J.); *Allen v. Holiday Universal, Inc.*, 249 F.R.D. 166 (E.D. Pa. 2008); (Pratter, J.); *Jordan v. Commonwealth Financial Systems, Inc.,* 237 F.R.D. 132 (E.D. Pa. 2006) (Davis, J.); *Beck v. Maximus, Inc.,* 2005 WL 589749 (E.D. Pa. March 11, 2005); *Stoner v. CBA Information Services,* 352 F.Supp.2d 549 (E.D. Pa. 2005); *Orloff v. Syndicated Office Systems, Inc.,* 2004 WL 870691 (E.D. Pa.

firm of Francis & Mailman, P.C. has been certified to serve as Class Counsel in over 54 cases, and has never been found not qualified to represent a class.  *See* firm bio, at Exhibit 5, for more information about the standing and experience level of Class Counsel.[6]

Moreover, Plaintiff has no interests that are antagonistic to the interests of the Class, and is unaware of any actual or apparent conflicts of interest between himself and the Class.

**B.**     **The Proposed Settlement Class Meets Rule 23(b)'s Requirements**

If the Rule 23(a) requirements are met, the proposed class must then fall into one of the categories set out in Rule 23(b) to warrant certification, namely that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The proposed Settlement Class meets these requirements.

**1.**     *Common Questions of Law and Fact Predominate Over Individual Ones*

Resolution of the common issues of fact and law in this case will not only promote the efficient adjudication of these matters, it will dispose of them entirely.

---

April 22, 2004);  *Petrolito v. Arrow Financial Services, LLC,* 221 F.R.D. 303 (D. Conn.  2004); *Gaumer v. The Bon-Ton Stores*, C.A. No. 02-8611 (E.D. Pa. Dec. 30, 2003) (Yohn, J.); *Street v. Portfolio Recovery Associates*, C.A. No. 01-3684 (E.D. Pa. July 30, 2003) (Tucker, J.); *Piper v. Portnoff Law Associates, Ltd.*, 215 F.R.D. 495 (E.D. Pa. 2003) (Katz J.); *Oslan v. Law Offices of Mitchell N. Kay,* 232 F. Supp. 2d 436 (E.D. Pa. 2002) (Katz, J.); *Samuel-Bassett v. Kia Motors America, Inc*., 212 F.R.D. 271 (E.D. Pa. 2002) (Joyner, J.) (class certified for breach of warranty claims), *vacated on other grounds*, 357 F.3d 392 (3d Cir. 2004); *Schilling v. Let's Talk Cellular and Wireless, Inc.*, 2002 WL 391695 (E.D. Pa. Feb. 6, 2002) (Robreno, J.); *Colbert v. Dymacol, Inc.*, 2001 WL 34083813 (E.D. Pa. Oct. 2, 2001) (Newcomer, J.) (striking offer of judgment and granting motion for class certification), *appeal dismissed as improvidently granted*, 344 F.3d 334 (3d Cir. 2003) (unanimous *en banc* decision); *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461 (E.D. Pa. 2000) (Robreno, J.).

[6]     Francis & Mailman's co-counsel, Consumer Litigation Associates and Kelly & Crandall, P.C. also possess similar qualifications.  *See Soutter v. Equifax Info. Servs., LLC*, 3:10CV107, 2011 WL 1226025, at *10 (E.D. Va. Mar. 30, 2011) ("[T]he Court finds that Soutter's counsel is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases.")

Plaintiff alleged on behalf of the Settlement Class that Defendant failed to comply with section 1681k of the FCRA by failing to notify those job applicants that adverse public record information was being reported about them at the time it reported such information to an employer, and also failing to use strict procedures to assure that the information on the reports was complete and up to date.  Plaintiff also alleged that Defendant failed to comply with section 1681g of the FCRA by failing to adequately identify the source of averse public record information it reported about members of the Settlement Class.  The internal policies and procedures that Defendant followed in not furnishing the required information – factual issues central to Plaintiff' claims – are generally common to all members of the Settlement Class.

In addition, Plaintiff alleged on behalf of this Class that Defendant's alleged failure to comply with sections 1681k and 1681g was "willful," *i.e*., that there is no objectively reasonable interpretation of the FCRA, as a matter of law, that supports Defendant's view that it was not required to comply.  *See Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 at 69 (2001).  This is a predominating legal question common to all Class members.

>   2.   *A Class Action is the Superior Method for Resolving the Class Members' Claims*

As to superiority, class settlement is the most efficient means of adjudicating the disputes raised here.  Separately litigating the common issues that bind the Settlement Class would be a practical impossibility, even assuming consumers had notice of their claims and it were economically feasible to pursue these claims on their own.  Where the alternative to a class action is likely to be no action at all for most of the class members, there is a strong presumption in favor of a finding of superiority.  *Cavin v. Home Loan Ct., Inc*., 236 F.R.D. 387, 396 (N.D. Ill. 2006).  Even if just a small fraction of the Class were to bring individual suits, the resolution of common

issues in a single proceeding here would be infinitely more efficient than the separate adjudication of individual claims in separate lawsuits across the country.

## IV.   THE SETTLEMENT IS FAIR AND ADEQUATE

### A.   Standards for Preliminary Approval of a Class Settlement

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval.  H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ("NEWBERG").  Preliminary approval is the first of essentially three steps that comprise the approval procedure for settlement of a class action.  The second step is the dissemination of notice of the settlement to all Class members.  The third step is a settlement approval or final fairness hearing.  *See* MANUAL FOR COMPLEX LITIGATION 4TH, § 21.63 (2004), *available at* http://www.fjc.gov ("MANUAL").  While a settlement class must satisfy each of the requirements of Rule 23(a) and Rule 23(b)(3), "the fact of settlement is relevant to a determination of whether the proposed Class meets the requirement imposed by the Rule."  *In re: Prudential Ins. Co. of America Sales Litigation*, 148 F.3d at 308-09.

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement appears fair and reasonable.  Fed. R. Civ. P. 23(e)(2); MANUAL at § 21.62.  As this Court has had occasion to rule:

> Such a preliminary determination requires the Court to consider the following factors: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id.* (citing 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.41, at 11–91 (3d ed. 1992)); *see also In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 254 (D. Del. 2002). If a court concludes, after consideration of those factors, that the settlement should be preliminarily approved, "... an initial presumption of fairness ..." is established. *In re Gen. Motors Corp.,* 55 F.3d at 785.

*In re Linerboard Antitrust Litigation*, 292 F.Supp.2d 631, 638 (E.D. Pa. 2003).

The approval of a proposed settlement of a class action is a matter within the broad discretion of the trial court.  Of course, settlements of class actions are favored in the law.  *See In re: General Motors Truck Litigation*, 55 F.3d 768, 784 (3d Cir. 1995).  Preliminary approval does not require the trial court to affirmatively answer the ultimate question of whether a proposed settlement is fair, reasonable and adequate.  That determination is made only after notice of the settlement has been given to the members of the Class and after they have been given an opportunity to voice their views of the settlement or be excluded from the Class.  *See Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the Parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation."  *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *Collier v. Montgomery County*, 192 F.R.D. 176, 184 (E.D. Pa. 2000) (citing factors established in *Girsh*, 521 F.2d 153).  Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight.  *See Collier*, 192 F.R.D. at 186.

In addition to being substantively reasonable in relation to the risks and likely rewards of litigation, the proposed settlement must be "the result of good faith, arm's length negotiations." *Id.* at 184.  In evaluating this requirement, courts proceed as follows:

> If the proposed settlement appears to be the product of serious informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class Representatives or segments of the Class, and falls within the range of possible approval, then the court should direct that notice be given to the Class Members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

*Id.*  A finding that these factors are present establishes an initial presumption of fairness.  *Id.*; *see also General Motors*, 55 F.3d at 785-86.   Here, the proposed settlement easily meets these standards.

        **B.**        **The Terms of the Proposed Settlement are Fair, Reasonable and Adequate**

The proposed settlement is reasonable when considered in light of disputed liability and the cognizable damages that members would otherwise have been permitted to recover if successful under the FCRA.  These factors demonstrate that the proposed settlement is an excellent result for the Class.

The proposed settlement is the product of serious, informed and non-collusive negotiations. Defendant has continued to deny any wrongdoing or legal liability arising out of the conduct alleged in this action.  Nonetheless, Defendant has concluded that it is desirable that this action be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement in order to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals.

Plaintiff and his counsel have weighed the expense and length of a trial in this action in this action against Defendant through possible appeals, which could take several more years, and have also taken into account the time already invested in this case, its uncertain outcome and the inherent risk of litigation.  Plaintiff and his counsel believe that the settlement set forth in the settlement agreement confers substantial immediate benefits upon the Settlement Class and that it is in the best interest of the Settlement Class.

The proposed settlement has no "obvious deficiencies" and falls well within the range for approval.

As noted, settlements of class action disputes are favored in the law, to bring finality and to conserve judicial resources. *General Motors*, 55 F.3d at 783.  Settlement of consumer class actions otherwise involving individual claims for small sums, such as the instant action under the FCRA, are particularly well suited to class settlement. *Chakejian v. Equifax Info. Servs., LLC*, 256 F.R.D. 492 (E.D. Pa. 2009)(certifying FCRA class).

The settlement does not improperly grant preferential treatment to the Plaintiff or segments of the Class.  The relief provided in the settlement will benefit all Class members equally.

## V.    THE PROPOSED NOTICE PLAN MEETS RULE 23'S REQUIREMENTS

Once preliminary approval of a settlement class is granted, Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Central Hanover Trust*, 339 U.S. 306, 314 (1950). Notice also must satisfy Rule 23(c)(2)(B), which provides that the notice must clearly and concisely state the following in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; and (vi) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2)(B) requires "individual notice to all members who can be identified through reasonable effort." *Larson v. AT&T Mobility LLC*, 687 F.3d 109, 123-24 (3d Cir. 2012).

### A.   The Notice Plan Satisfies Rule 23 and Due Process

Here, the Notice is written in easy and plain language and contains the information required by Rule 23(c)(2)(B).  *See* Exhibit 2.  Accordingly, the form of notice and plan of dissemination should be approved.

### B.   Request for Approval of Notice Plan

The Notice Plans for the Rule 23(b)(3) Settlement Class described above amply satisfy the Rule 23(e)(1) requirement that notice be directed in a "reasonable manner to all class members who would be bound by the proposal."

## VI.   CONCLUSION

For the reasons mentioned above, the Parties' proposed settlement is fair and adequate, and Plaintiff respectfully moves for entry of the proposed Order of Preliminary Approval, attached as Exhibit 3.

Dated: March 17, 2017                    Respectfully submitted,

FRANCIS & MAILMAN, P.C.

/s/ *James A. Francis*
James A. Francis
100 S. Broad Street, Suite 1902
Philadelphia, PA 19110
T: 215-735-8600
Fax (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Kristi Cahoon Kelly
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
E-mail: kkelly@kellyandcrandall.com

*Attorneys for Plaintiff and the Class*